VANDER POEL, FRANCIS & COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9119. Promulgated February 25, 1947.

*Earl D. Deremer, Esq.,* for the petitioner.
*Walt Mandry, Esq.,* for the respondent.

OPINION.

BLACK, *Judge*: The Commissioner has determined a deficiency of $791.55 in petitioner's income tax for the year 1942 and a deficiency of $7,883.98 in its excess profits tax for the same year.

In the deficiency notice the Commissioner made three adjustments to the net income of petitioner as reported on its return for the year 1942. The only one of these adjustments which petitioner contests is the disallowance of part of the deduction which petitioner claimed for officers' salaries paid. The amount which the Commissioner dis-

allowed was $11,781.51 and the reason for this disallowance is explained in the deficiency notice as follows:

(a) It is held that as the corporation reports its income and deductions on the basis of cash receipts and disbursements, a deduction is not allowable for the portion of officers' salaries not actually paid within the year.

Accordingly, the amount of $11,781.51 is disallowed.

The petitioner by an appropriate assignment of error contests the above adjustment.

The facts are stipulated and we adopt them as our findings of fact. They may be summarized as follows:

The petitioner is a corporation, organized under the laws of the State of New York, with its principal office in New York City. It filed its Federal income and declared value excess profits tax return for the calendar year 1942 with the collector of internal revenue for the second district of New York. It maintained double entry books of account, which it kept on the cash receipts and disbursements basis. Its Federal income tax returns for the calendar year 1942 and for previous years were filed on the same basis.

S. Oakley Vander Poel was the elected and acting president of the petitioner for the full year 1942. On February 25, 1942, his salary was established by the board of directors at $20,000 per year and on September 3, 1942, an additional salary of $4,000 was voted by the board of directors. James W. Francis was the elected and acting vice president and treasurer of the petitioner for the full year 1942. On February 25, 1942, his salary was established by the board of directors at $11,000 per year and on September 3, 1942, an additional salary of $2,200 was voted by the directors. These salaries were voted without restriction as to time or manner of payment. The petitioner on its books credited these salaries of $24,000 and $13,200 to the accounts of the respective officers and charged such amounts to the salary accounts as expenses of the petitioner. The accounts of the two officers involved, as stated in the books of account, are summarized as follows:

| | S. Oakley Vander Poel | | James W. Francis | |
| --- | --- | --- | --- | --- |
| | Debit | Credit | Debit | Credit |
| Balance, Jan. 1, 1942 | | $278.11 | $2,989.93 | |
| Miscellaneous credits during year | | 161.40 | | $3,817.78 |
| Salary credit | | 24,000.00 | | 13,200.00 |
| Charges during year | $13,817.34 | | 11,601.15 | |
| Total | 13,817.34 | 24,439.51 | 14,591.08 | 17,017.78 |
| Balance December 31, 1942 | | 10,622.17 | | 2,426.70 |

The disallowance of officers' salaries was determined as follows:

|  | Credits | Debits | Difference |
|---|---|---|---|
| S. Oakley Vander Poel | $24,000.00 | $13,817.34 | $10,182.66 |
| James W. Francis | 13,200.00 | 11,601.15 | 1,598.85 |
| Total | 37,200.00 | 25,418.49 | 11,781.51 |

The petitioner, in its return for 1942, claimed as a deduction for officers' salaries the sum of $37,200. The Commissioner disallowed officers' salaries to the extent of $11,781.51. The correctness of this disallowance is the only issue in this case. The Commissioner does not question the reasonableness of the amounts of these salaries.

S. Oakley Vander Poel and James W. Francis, in their individual Federal income tax returns for the year 1942, reported on the basis of cash receipts and disbursements and included in such returns as income their respective salaries as credited to their accounts, as follows: S. Oakley Vander Poel, $24,000; James W. Francis, $13,200.

S. Oakley Vander Poel and James W. Francis at all times during the year 1942 were authorized jointly to sign checks on all bank accounts of petitioner and were authorized to draw checks to the order of either. The bank balances of the petitioner at the end of the year 1942 were in excess of $100,000.

The fair value of the current assets of the petitioner was at all times during the year 1942 in excess of current liabilities (including any credit balance due officers) and likewise the fair value of its total assets was always in excess of the total liabilities. The following is a record of the stockholdings of the petitioner as of December 31, 1942:

| | |
|---|---|
| S. Oakley Vander Poel | 2,250 shares |
| James W. Francis | 1,238 shares |
| Rene A. Carreau | 282 shares |
| Frederick Ott | 282 shares |
| David Webster | 282 shares |

There is but one issue involved in this proceeding, and that is whether petitioner, a corporation which kept its books and made its income tax returns on the cash basis, is entitled to deduct the full amount of the salaries regularly and duly voted to its two officers, Vander Poel and Francis, and unconditionally credited to their respective accounts, notwithstanding it did not actually pay the full amount of these salaries in cash or other property during 1942.

The Commissioner in his determination of the deficiencies has allowed as a deduction for petitioner all the cash which these two officers drew in 1942, but has disallowed the $11,781.51 which they did not draw but which was unconditionally credited to their respective accounts. The contention of petitioner is that it unconditionally

credited the full amount of these salaries to the two officers in 1942; that they could have drawn the entire amounts due them at any time they wished; that their failure to do so was the voluntary act of their own; that unquestionably each was taxable on his entire 1942 salary under the doctrine of constructive receipt; and that each did actually return his full salary for taxation and pay income tax thereon. "Therefore," says petitioner, "the doctrine of constructive payment should be applied under the above facts and petitioner should be allowed to deduct the full amount of these salaries instead of the portions which the Commissioner has allowed."

The Commissioner, on his part, makes no contention that the salaries voted to these two officers were not reasonable in amount and bona fide in every respect, but he takes the position that petitioner was on the cash basis and is entitled to deduct only the amounts which it actually paid in 1942 on these salaries in cash or other property and that it can not deduct, under the doctrine of "constructive payment," the amounts which were not paid in 1942 but were credited to the two officers' accounts. Respondent concedes that the doctrine of "constructive receipt" has had frequent application, but not so the doctrine of "constructive payment," and that the "constructive receipt" cases are not controlling. We think the weight of authority supports respondent.

In *John A. Brander*, 3, B. T. A. 231, which is one of the early cases dealing with the doctrine of "constructive receipt" and has been cited often, we said that the doctrine of constructive receipt "is not to be applied lightly, but only in situations where it is clearly justifiable." Since the *Brander* decision, the doctrine of "constructive receipt" has been applied often, as a study of the many decisions on that subject disclose. But not so the doctrine of "constructive payment." This fact may seem illogical. We took note of this apparent discrepancy between the two situations in *Cox Motor Sales Co.*, 42 B. T. A. 192, a case involving the question as to whether the corporate taxpayer was entitled to a "dividends paid credit" under section 27, Revenue Act of 1936. In holding against the taxpayer we said:

Even if we assume in petitioner's favor, however, that the Commissioner should have taxed to the shareholders the dividends as constructively received in 1936, it does not follow as a matter of law, however inevitable the conclusion of the syllogism would be in logic, that within the meaning of section 27 the dividends should be considered "paid" in the earlier year by the corporation. See *Black Motor Co.*, 41 B. T. A. 300, 305. The asymmetry of the taxing statutes has been the subject of frequent comment by the courts. See *Helvering* v. *City Bank Farmers' Trust Co.*, 296 U. S. 85. However desirable it may be thought on logical grounds that constructive receipt by the stockholders should imply its correlative, constructive payment by the corporation, see Paul and Mertens, 1 Law of Federal Income Taxation, 1939 Supp., § 32A-24; we are not at liberty on that account to construe the section before us in a way that would obviously

pervert the intent of Congress that actual payments should be made by the corporation to justify the deduction of the dividend claimed.

In *Martinus & Sons* v. *Commissioner*, 116 Fed. (2d) 732, affirming B. T. A. memorandum opinion, the court held that the corporate taxpayer which prepared its income tax returns on the cash basis was entitled to deduct salaries of corporate officers only to the extent that the salaries were actually paid and was not entitled to deduct as a "business expense" the salaries which were authorized but were not paid during the tax year. In so holding the Circuit Court, among other things, said:

Petitioner argues that the salaries authorized ought to be treated as having been constructively paid. The Commissioner concedes that there are circumstances in which a taxpayer, although on a cash basis, is entitled to treat money not actually paid out as though it had been so paid. But without discussion of special situations of that sort, it is enough to say that there is nothing here to support the notion of constructive payment. The authorities petitioner cites do not sustain its argument.

The court then in a footnote points out that the taxpayer in the *Martinus* case relied upon, as its principal authorities, *Sanford Corporation* v. *Commissioner*, 106 Fed. (2d) 882, and *Jacobus* v. *United States*, 9 Fed. Supp. 41.

The petitioner argues in its brief that the facts in the instant case distinguish it from the *Martinus* case. It is true that an examination of the facts in the *Martinus* case discloses that there was not "constructive receipt," as that term is described in the Treasury regulations, by the two officers of the corporation to whom the salaries had been voted during the taxable year. There was also no "constructive receipt," as we understand the term, by the husband in *Claude Patterson Noble*, 7 T. C. 960, to which we shall presently refer. If it were the law that "constructive payment" is a necessary corollary to "constructive receipt," then undoubtedly the instant case could be distinguished from the *Martinus* case and the *Noble* case. It is perfectly clear from the facts in the instant case that there was "constructive receipt" by Vander Poel and Francis of the salaries voted to them by petitioner in 1942. They properly returned these salaries for taxation on their 1942 returns under the doctrine of "constructive receipt." But the weight of authority as we interpret the authorities is against the doctrine that "constructive payment" is a necessary corollary of "constructive receipt." Mertens, in his Law of Federal Income Taxation, vol. 2, sec. 10.18, says:

Constructive Payments as Deductions. Under the doctrine of constructive receipt a taxpayer on the cash basis is taxed upon income which he has not as yet actually received. Logically it would seem that where the payee is held to have constructively received an item as income, the payor should be entitled to deduct the same item as constructively paid, but the statute rather than logic

is the controlling force in tax cases and so it is not surprising to find such reasoning often rejected. The difference is that the statute is presumed to reach and tax all income, and the doctrine of constructive receipt is an aid to that end. It must be remembered that the doctrine of constructive receipt is designed to effect a realistic concept of realization of income and to prevent abuses. Deductions, on the other hand, are a matter of legislative grace, and the terms of the statute permitting the particular deduction must be fully met without the aid of assumptions. "What may be income to the one may not be a deductible payment by the other." A review of the cases indicates that the courts will seldom support a doctrine of constructive payment in the sense in which it is used in this chapter, i. e., to determine when an item has been paid rather than who has paid it.

&ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

In the case of the *Central Hanover Bank & Trust Co.* v. *United States*, decided by the U. S. District Court of the Southern District of New York on December 27, 1935, and reported in 17 A. F. T. R. 1033 (but apparently not reported in Federal Supplement), the court, in our opinion, succinctly and correctly expressed the applicable principle of law in these words:

When the books of the taxpayer are kept on a cash receipts and disbursements basis, the return must be made out on such basis and all credits and disbursements included in such return must be taken as of the date of the actual payment to or by the taxpayer. This is the essence of the cash basis method and is in contrast with the accrual basis method which accrues the taxpayer's credits and charges. *Eckert* v. *Burnet*, 283 U. S. 140, 51 S. Ct. 373, 75 L. Ed. 911 [9 Am. Fed. Tax Rep. 1413] ; *U. S.* v. *Mitchell, et al.*, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799 [5 Am. Fed. Tax Rep. 6008] ; *Fidelity Title & Trust Co.* v. *Heiner*, 34 F. (2d) 350 [7 Am. Fed. Tax. Rep. 9338].

If in any of our decisions, memorandum opinions or otherwise, we have said anything to the contrary of the above holdings, we think it is against the weight of authority and should not be followed. Therefore, following *Martinus & Sons* v. *Commissioner, supra*, and other cases above cited, we sustain the Commissioner. See also our recent decision in *Claude Patterson Noble, supra*, in which among other things, we said:

* * * No payment was made in 1942 by petitioner to her husband for his services; but the payment for services rendered in that year was made in 1943. Likewise the payment for 1943 services was not made until February 1944. It is argued that the custom was that petitioner's husband prepare all checks for her signature and that had he seen fit to do so, he could have received payment of the full amount of the salary at the close of each year for which the service was rendered. Thus it is said to follow that petitioner constructively paid and her husband constructively received payment of the salary for 1942 and 1943 at the close of each of those years. The fact remains, however, these checks were not prepared, signed, or delivered until after the close of those respective years. Accordingly there was no such payment or receipt in either case until after the close of the year. *Massachusetts Mutual Insurance Co.* v. *United States*, 288 U. S. 269; *Martinus & Sons* v. *Commissioner*, 116 Fed. (2d) 732; *Cox Motor Sales Co.*, 42 B. T. A. 192; *Sanford Corporation* v. *Commissioner*, 106 Fed. (2d) 882.

Cf. *Cleaver* v. *Commissioner*, 158 Fed. (2d) 342, affirming 6 T. C. 452.

Both parties in their briefs cite and discuss several cases which deal with deductions under section 24 (c) of the code. The instant case is not a section 24 (c) case, therefore, we have not discussed in this report these section 24 (c) cases which have been cited. We have examined them, however, and do not believe that any of them are contrary to what we have held above.

Reviewed by the Court.

*Decision will be entered for the respondent.*

———

ARUNDELL, *J.*, dissenting: The majority do not question the fact that the salaries in dispute were constructively received by the corporate officers. On the contrary, I take it that all will agree that the salaries were constructively received. They were unconditionally credited to the individual accounts of the officers pursuant to a formal vote by the board of directors; they were voted without restrictions as to the time or manner of payment; and the officers were authorized to draw checks on all the corporation's bank accounts to their own order. That the corporation was able to pay is shown by the fact that its total assets were in excess of its total liabilities throughout the year, and the cash on deposit in banks was greatly in excess of the amounts due the officers. The officers themselves reported their full salaries as income for the taxable year in question. Thus, it appears beyond cavil that the full amounts of the salaries were unconditionally available to the corporate officers for the taking. Therefore, under Regulations 111, sections 29.42–2 and 29.42–3, and under such decisions as *John A. Brander*, 3 B. T. A. 231; *Jacobus* v. *United States*, 9 Fed. Supp. 41; *John I. Chipley*, 25 B. T. A. 1103, and many others, a clearer case of constructive receipt would be difficult to imagine.

It seems to me that neither legally, economically, nor logically can there ever be a *constructive* receipt without a concomitant *constructive* payment. Whether or not a constructive payment is within the word "paid" as used in a particular statute or section of the code is a different question. For example, we have recently said that a constructive payment will not satisfy the term "paid" in section 24 (c) (1) of the code, relating to deductions for unpaid expenses and interest. See *Anthony P. Miller, Inc.*, 7 T. C. 729; cf. *P. G. Lake, Inc.*, 4 T. C. 1; affd., 148 Fed. (2d) 898. (However, at least one Circuit Court has held to the contrary, *Musselman Hub-Brake Co.* v. *Commissioner*, 139 Fed. (2d) 65, and even this Court in a number of memorandum opinions has at least intimated to the contrary.) So, also, it has been said that a constructive payment will not satisfy the term "paid" in section 27, relating to the "dividends paid credit" of corporations. *Cox Motor*

*Sales Co.*, 42 B. T. A. 192; *Sanford Corporation* v. *Commissioner*, 106 Fed. (2d) 882; but see *Valley Lumber Co. of Lodi*, 43 B. T. A. 423.

Sections 24 (c) and 27, however, are statutes having a special and limited purpose and spring from a background having to do with tax evasion or avoidance. And so, while a constructive payment may not satisfy these particular statutes because of their special purpose, decisions so holding or intimating are not very good precedents for determining whether a constructive payment is within the terms of a statute having broad and general applicability. Moreover, I think it noteworthy that in the *Miller, Lake, Cox*, and *Sanford* cases, cited in the preceding paragraph, it was found that there was no constructive receipt by the payees in the taxable year of the payors, the taxpayers.

The case primarily relied upon by the majority, *Martinus & Sons* v. *Commissioner*, 116 Fed. (2d) 732, in my opinion, affords little support for the conclusion reached. It seems to me that case and this one are alike only in that in each the taxpayer-corporation and the officers whose salaries were in question were both on a cash basis of accounting. From that point on the similarity ceases, as is shown by the following quotation from our memorandum opinion in the *Martinus* case:

> Briefly, our determination is chiefly based on the following grounds: That the petitioner kept its records and filed its income tax returns on the basis of cash receipts and disbursements; *that the salaries it was agreed the officers, in 1935, were entitled to were never set aside to or for them, never credited to them by petitioner on its records, and, in our opinion, were never actually nor constructively received by them in 1935,* except in the specific amounts allowed them as deductions by the respondent; that the salaries to which the officers were entitled were not available to them, so that "at any time" during 1935 they might have drawn on petitioner for the amounts and received the same; *that their salaries were not always and "at any time" available to them, so as to constitute payment, actual or constructive.* [Italics mine.]

It is apparent, therefore, that in the *Martinus* case there was not a constructive receipt by the corporate officers, and it was so held. Of course, if there was no constructive receipt there could be no constructive payment. For that reason I think that neither factually nor in principle does the *Martinus* case aid the view taken by the majority here.

We do not have here a case involving the application or construction of a special statute such as section 24 (c) or section 27, and I think the majority opinion recognizes this fact. Rather, it is a question involving interpretation of statutes of general applicability to all taxpayers, sections 42 and 43 of the code, relating respectively to the period in which items of gross income are taxable and the period in which deductions and credits are taken. For a cash basis taxpayer, section 42 prescribes the general rule that items of gross income shall

be included in the gross income for the taxable year in which "received" by the taxpayer, and section 43 provides that deductions shall be taken for the taxable year in which "paid." The doctrine of constructive receipt has been engrafted upon the term "received" in section 42 on the theory that where one on a cash basis can receive income for the asking, it is tantamount to or the equivalent of receipt.

Here we have a situation in which the taxpayer-corporation and its officers are on the same basis of accounting, i. e., the cash receipts and disbursements basis. That which is an item of gross income to the payees is an item of deductible expense to the payor. The respondent does not contend here that the salaries were excessive or unreasonable. In these circumstances, the ultimate question, as I see it, is why, if the facts are such as to amount to a receipt of taxable income by the payees, they do not also amount to a payment by the payor. I think they do.

For the reasons stated I respectfully dissent.

TYSON, *J.*, agrees with this dissent.